UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES GAFFNEY,

                                  Plaintiff,

      - against -                                     15-CV-5290 (CS)

VILLAGE OF MAMARONECK                    **OPINION & ORDER**
POLICE DEPARTMENT, *et al.*,

                                Defendants.

---

Appearances:

James Gaffney
Mamaroneck, NY
*Plaintiff Pro Se*

Richard S. Finkel
Howard M. Miller
Bond, Schoeneck & King, PLLC
Garden City, NY
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  (Doc. 28.)  For the reasons stated below, the Motion is GRANTED.

**I.**      **Background**

      *A. Facts*

      For purposes of this Motion, the Court accepts as true the facts (but not the conclusions) alleged by Plaintiff in the Second Amended Complaint ("SAC"), (Doc. 26).

      Plaintiff James Gaffney is a sixty-two-year-old resident of Mamaroneck, New York, and has been employed by Defendant Village of Mamaroneck Police Department (the "Department")

1

since 1976.  (SAC ¶¶ 1, 3.)  He currently serves as a Support Services Lieutenant and has worked in that capacity since December 1, 2008.  (*Id.* ¶ 2.)

According to Plaintiff, in August 2005 he was promoted from the position of Lieutenant to Executive Lieutenant/Executive Officer ("EO"), a position that was effectively second in command at the Department, and the responsibilities for which were recognized within the Department to be synonymous with Captain.  (*Id.* ¶¶ 7-9.)  Lieutenants were directly under the EO in the Department chain of command, and they, along with the Marine Unit and Community Services Division, all reported directly to Plaintiff.  (*Id.* ¶¶ 12-13.)

On December 1, 2008, the Department advised Plaintiff that it had decided to adopt the recommendation of an outside consulting group, The Bratton Group, LLC, and eliminate the EO position.  (*Id.* ¶¶ 14-16.)  Plaintiff was informed that his rank was to revert back to Lieutenant, and he would be in charge of the newly created Support Services Division.  (*Id.* ¶ 16.)  This Division was tasked with evidence and property retention; managing the property room and all Department equipment; addressing Department accreditation; applying for grants; processing payroll records; managing Department orders, supplies and forms; communicating with outside agencies and the media; posting job vacancies and processing new employees; and hiring school guards and park rangers.  (*Id.* ¶ 23.)  The Support Services Division was allotted one sergeant and one police officer to work under Plaintiff, and in 2009, was also assigned a part-time civilian administrative assistant.  (*Id.* ¶¶ 19, 25.)

According to Plaintiff, in making its recommendation that he head the Support Services Division, The Bratton Group acknowledged that he was the only Lieutenant of the three at the Department with administrative experience.  (*Id.* ¶ 17.)  Plaintiff was fifty-four years old at the time.  (*Id.* ¶ 19).  The other two Lieutenants – forty and forty-five years old at the time – were

2

put in charge of the Community Services Division, with six sergeants and thirty-four police officers, and the Investigations Division, with one sergeant and four detectives.  (*Id.* ¶ 20.)

On April 26, 2010, Defendant Norman Rosenblum, who was Mayor of Mamaroneck at the time, directed then-Chief of Police Edward Flynn to downsize the Support Services Division by reassigning elsewhere the only two officers in that Division.  (*Id.* ¶ 27.)  According to Plaintiff, the Support Services Division became (and still is) the only division without any police officers.  (*Id.* ¶ 29.)  Plaintiff alleges this was when he first became aware that he was being marginalized and harassed because of his age.  (*Id.* ¶ 27.)

On or about June 28, 2010, Chief Flynn appointed Plaintiff and Defendant Lieutenant Christopher Leahy "Officers in Charge of the Department."  (*Id.* ¶ 32.)  This meant that when Chief Flynn was away, Plaintiff and Lieutenant Leahy alternated shifts serving as head of the Department.  (*Id.*)

In July 2010, Chief Flynn informed Plaintiff that he had "finally agreed to [Mayor] Rosenblum's repeated attempts to have Flynn retire."  (*Id.* ¶ 33.)  Flynn apparently informed Plaintiff that in their conversation about retirement, Rosenblum had added, "Gaffney has to go too."  (*Id.*)  Rosenblum also told Flynn to place Lieutenant Leahy in charge of the Department. (*Id.*)  Plaintiff told Flynn to pass along the message to Rosenblum that he was not leaving or retiring from the Department.  (*Id.*)

The Village of Mamaroneck Board of Trustees interviewed three lieutenants on August 10, 2010 to find Flynn's replacement:  Plaintiff, Lieutenant Leahy and Lieutenant Girardi.  (*Id.* ¶ 35.)  At the time, Plaintiff was fifty-six, Lieutenant Leahy was forty-two, and Lieutenant Girardi was forty-seven.  (*Id.* ¶ 36.)  The interviews were attended by the Board of Trustees, including

3

Mayor Rosenblum, and Defendant Village Manager Richard Slingerland and Assistant Village Manager Daniel Sarnoff.  (*Id.* ¶ 35.)

According to Plaintiff, Mayor Rosenblum declared at the interview that although he had the qualifications for the Chief of Police position, it could not be offered to Plaintiff because it was "known" that he was actively relocating to South Carolina.  (*Id.* ¶ 37.)  Plaintiff responded by saying he was neither relocating nor retiring.  (*Id.*)  During the interview, the "lead topics" were Plaintiff's age, the amount of time he had served the Department, and his rumored retirement.  (*Id.* ¶ 39.)  Specifically, Defendant Slingerland asked Plaintiff several questions about his age, including what "tier" he was in – a reference to his salary level and anticipated retirement benefits based on seniority.  (*Id.* ¶ 40.)  Slingerland also asked Plaintiff's date of birth and the year he was appointed.  (*Id.*)  When Plaintiff inquired as to why Slingerland was asking these questions about his age, he did not respond.  (*Id.*)  Plaintiff then demanded that Slingerland stop asking about his age and reiterated that he had no intention of retiring.  (*Id.*)

On August 13, 2010, Slingerland advised Plaintiff that the Board of Trustees had appointed Lieutenant Leahy to replace Flynn as Chief of Police, and on August 26, Mayor Rosenblum formally appointed Leahy to the position.  (*Id.* ¶¶ 41-43.)  At Chief Leahy's direction, several of the Support Services Division's areas of authority were removed, leaving Plaintiff "reduced to a police administrator without any interactive role as a part of the Command Staff.  [His] sole function was then and is now limited to supervising non-police personnel."  (*Id.* ¶ 46.)  According to Plaintiff, these changes left him as the only lieutenant heading a division without any police staff, the only lieutenant reporting directly to another lieutenant, and the lowest lieutenant in the chain of command.  (*Id.* ¶¶ 56-58.)

Plaintiff made it known that he was not retiring and that he desired a transfer to an executive position in either of the other two divisions within the Department. (*Id.* ¶ 47.) Instead of transferring Plaintiff, however, on September 26, 2010, Chief Leahy promoted Sergeant Dominick Falcone, a forty-six-year-old, to the position of Lieutenant in charge of the Community Services Division. (*Id.* ¶ 48.) And when the organization of the Department changed again in October 2010 to informally reinstate the EO position – now called simply "Operations" but still second-in-command to the Chief – Chief Leahy promoted Lieutenant Falcone to that position despite Plaintiff's seniority and transfer requests. (*Id.* ¶¶ 50-51, 53.)

In late 2011 or early 2012, Lieutenant Girardi announced his retirement. (*Id.* ¶ 59.) Plaintiff again went to Chief Leahy and requested a transfer to head the Investigations Division that Girardi was leaving. (*Id.* ¶ 60.) Despite Plaintiff's request and his seniority and experience, he was again bypassed when Chief Leahy selected Sergeant Tom Anderson, a forty-six-year-old, to head the Division. (*Id.* ¶ 61.) When Sergeant Anderson turned down the assignment, Leahy chose Detective Sergeant Charles Lanza, a forty-two-year-old, to head Investigations. (*Id.*) Plaintiff alleges that Lanza was promoted despite the fact that the Department Manual of Procedure requires that a lieutenant be put in charge of the Investigations Division. (*Id.* ¶ 63.)

Plaintiff alleges that all of the above reorganization was designed to "get rid of the old guys," and that he has been "stripped of staff and responsibilities, demoted in status, and maintained in a Command Staff position that is devoid of any police operations," all because of his age. (*Id.* ¶¶ 64-65.)

Plaintiff lists other slights that have occurred since 2012 that he alleges were due to his age. He made a request "to be returned to plain clothes" that was denied. (*Id.* ¶ 69.) He was not given a bulletproof vest. (*Id.*) In 2013, Chief Leahy, Lieutenant Falcone and Sergeant Lanza

5

participated in a fifteen-day leadership training seminar, of which Plaintiff was not advised. (*Id.* ¶ 73.) And when the other members of the Command Staff were away, Plaintiff was not advised that he was in charge of the Department. (*Id.* ¶ 74.) In general, Plaintiff is not allowed to participate in management-level decision making. (*Id.* ¶¶ 75-76.)

Plaintiff alleges that on October 2, 2013, at a Department staff meeting, Chief Leahy stated that he had the ability to appoint an EO but did not need one because everything was working properly. (*Id.* ¶ 78.) Plaintiff stated that if an EO was necessary, he was "to be returned to [his] former position." (*Id.*) He then asked Leahy to clarify the chain of command, and Leahy responded that he (Leahy) was first, Lieutenant Falcone second, and Detective Sergeant Lanza third. (*Id.* ¶ 79.) Department rosters confirm this "pecking order," (*id.* ¶ 80), which Leahy reaffirmed at a staff meeting on February 26, 2014, (*id.* ¶ 81).

Plaintiff further alleges that since 2012, he is the only member of Command Staff who is not permitted to work overtime despite the fact that he supervises the Park Rangers, who work in the evenings and on weekends. (*Id.* ¶ 66-68.) Plaintiff says he has been required to go to the Department on his off time during evenings and weekends to meet with the Park Rangers. (*Id.* ¶ 68.)

### B. *Procedural History*

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 4, 2014, claiming a violation of the Age Discrimination in Employment Act ("ADEA"). (*Id.* ¶ III.) By letter dated April 7, 2015, the EEOC recognized Plaintiff's right to sue. (*Id.*)

Plaintiff filed his initial complaint on July 8, 2015. (Doc. 1.) On August 25, 2015, Defendants filed a letter seeking a pre-motion conference in order to file a motion to dismiss.

(Doc. 15.)  Plaintiff filed both an amended complaint and a letter in response.  (Docs. 18, 21.)  On October 6, 2015, this Court held a pre-motion conference to discuss Defendants' motion.  Plaintiff again amended his complaint, filing the SAC on November 23, 2015.  (Doc. 26.)  The instant Motion followed.

**II.     Discussion**

Defendants move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

  A.    *Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

7

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Because Plaintiff is appearing *pro se*, he is entitled to "special solicitude" in that his "submissions must be construed liberally . . . to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*per curiam*) (internal quotation marks and citations omitted).

### B. *Age Discrimination Claim*

Defendants move to dismiss Plaintiff's age discrimination claims, arguing that they are untimely.

Before filing a lawsuit in federal court, a plaintiff alleging ADEA claims must exhaust administrative remedies by filing a charge with the EEOC. *See* 29 U.S.C. § 626(d). "Under the ADEA, a plaintiff in a 'deferral state' such as New York must first file an administrative charge with the EEOC within 300 days of the alleged violation in order to preserve his right to bring a lawsuit." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906-07 (2d Cir. 1997). Any acts that occurred more than 300 days prior to filing an ADEA charge with the EEOC are generally time-barred. *See Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 469 n.6 (S.D.N.Y. 2013).

Plaintiff alleges that he filed his EEOC charge on November 4, 2014. (SAC ¶ III.) As a result, only acts that occurred within the 300 days prior to November 4, 2014 – in other words, after January 8, 2014 – may be the subject of timely ADEA claims. Defendants argue that "[b]ecause each adverse action alleged by Plaintiff occurred well prior to January 8, 2014, his

8

ADEA claims must be dismissed." (Ds' Mem. 9.)[1] Although Plaintiff concedes that "almost every reported individual act of misconduct listed in the [SAC] took place before January 8, 2014," his ADEA claims are not time-barred because (1) one reported act does fall within the 300-day window, and (2) the acts alleged, in sum, show a continuing violation amounting to a hostile work environment. (P's Opp. 4.)[2]

### 1. Discriminatory Actions Within the 300-Day Limitations Period

The one alleged adverse action that the parties agree fell within the 300-day period prior to Plaintiff's filing of an EEOC charge occurred at a February 26, 2014 staff meeting. As discussed above, Plaintiff alleges that at that meeting, Chief Leahy "reaffirmed" the chain of command within the Department – Chief Lahey at the top, followed by Lieutenant Falcone and Detective Sergeant Lanza.

"A discrete retaliatory or discriminatory act occurred on the day that it happened." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). "[A] completed act such as a discontinuance of a particular job assignment is not of a continuing nature." *Id.* Thus, Plaintiff's demotions and reductions in responsibility, which are untimely, are not revived simply because Chief Leahy later referred to their result. His "reaffirmance," in and of itself, is neither an adverse nor a discriminatory act. It may have evidenced that Plaintiff was denied the positions that he wanted within other divisions, shown the changes in his job responsibilities that resulted from reorganization within the Department, and possibly demonstrated the attendant loss of prestige associated with those changes. But the denial of Plaintiff's requests to be promoted and

---

[1] "Ds' Mem." refers to Defendants' Memorandum of Law in Support of Motion to Dismiss, (Doc. 30).

[2] "P's Opp." refers to Plaintiff's Opposition to Defendants' Memorandum of Law in Support of Motion to Dismiss, (Doc. 31).

transferred, and the changes made to his job and supervisory responsibilities, occurred "on the day [they] happened," *see id.*, which even Plaintiff concedes was well before the limitations period expired. The February 26, 2014 staff meeting therefore does not salvage Plaintiff's ADEA claims as a discrete discriminatory act within the 300-day window.

Nor are Plaintiff's claims that he continues to be denied overtime and a bulletproof vest timely. "A plaintiff may not simply characterize a discrete act of discrimination as ongoing in order to circumvent stringent time limits." *Gilliard v. N.Y. Pub. Library Sys.*, 597 F. Supp. 1069, 1077 (S.D.N.Y. 1984). Plaintiff fails to plead any details surrounding the denial of overtime and a bulletproof vest, which are generally discrete acts, *see Karam v. Cty. of Rensselaer*, No. 13-CV-1018, 2016 WL 51252, at *5 (N.D.N.Y. Jan. 4, 2016) (refusal to issue equipment is discrete act)[3]; *Stewart v. City of N.Y.*, No. 11-CV-6935, 2012 WL 2849779, at *8 (S.D.N.Y. July 10, 2012) (denial of overtime is discrete act), except to say that it was in 2012 – well outside the 300-day period – that he was no longer permitted to work overtime.

Accordingly, Plaintiff has failed to adequately plead any discriminatory acts that occurred within the 300 days prior to the date on which he filed his EEOC charge.

### 2. Continuing Violation Doctrine

An exception to the 300-day rule is the "continuing violation" doctrine, which "extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations." *Lightfoot*, 110 F.3d at 907. The continuing violation exception – which is disfavored in the Second Circuit, *see, e.g.*, *Sherman v. Nat'l Grid*, 993 F. Supp. 2d 219, 225 (N.D.N.Y. 2014) – requires a showing of "specific discriminatory policies or mechanisms such

---

[3] The Court will send Plaintiff copies of all unpublished decisions cited in this opinion.

as discriminatory seniority lists, or discriminatory employment tests." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted), *abrogated in part on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).  The exception does not apply, however, to "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism." *Id.*  In other words, the continuing violation doctrine does not apply to a series of discrete discriminatory acts.  *Morgan*, 536 U.S. at 113-14; *see Bailey v. Synthes*, 295 F. Supp. 2d 344, 353 (S.D.N.Y. 2003).

The continuing violation doctrine is inapplicable here.  The discriminatory adverse acts alleged in the SAC – the failure to promote Plaintiff, denial (or ignoring) of his requests for transfer to other divisions, denial of his preferred job assignments, changes in his duties, denial of training opportunities, denial of overtime and denial of equipment – are all discrete acts.  *See Morgan*, 536 U.S. at 114 (failure to promote and denial of transfer); *Karam*, 2016 WL 51252, at *5 (refusal to issue equipment); *Anderson v. N.Y.C. Dep't of Corr.*, No. 12-CV-4064, 2013 WL 5229790, at *3 (S.D.N.Y. Sept. 17, 2013) (change in duties and denial of training opportunity); *Stewart*, 2012 WL 2849779, at *8 (denial of overtime); *Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005) (undesirable work transfers and denial of preferred job assignments).  These discrete acts cannot be considered under the continuing violation doctrine.  *See Morgan*, 536 U.S. at 113-14; *Bailey*, 295 F. Supp. 2d at 353.

And although Plaintiff has provided a detailed timeline of the acts he alleges were discriminatory, he has not alleged the existence of any discriminatory policy or mechanism such as a discriminatory employment test or seniority list.  Plaintiff repeatedly points to the younger ages of other officers for whom he was passed over, but that in and of itself is not evidence of a discriminatory policy.  *See Wiebke v. Hanjin Shipping Co.*, No. 97-CV-7287, 1999 WL 292554,

11

at *3 (S.D.N.Y. May 7, 1999); *Strohmeyer v. Int'l Bhd. of Painters*, 989 F. Supp. 455, 459 (W.D.N.Y. 1997), *aff'd*, 164 F.3d 619 (2d Cir. 1998).  Nor do the age-related comments by Defendants Rosenblum or Slingerland during Plaintiff's interview process suggest a "discriminatory policy or mechanism."[4]  Further, Plaintiff does not plead that the Department's continued refusal to issue him a bulletproof vest and allow him to seek overtime was a Department policy or mechanism – indeed, Plaintiff fails to plead any pertinent facts relating to these denials.  These discrete acts cannot simply be "lumped together" to form a continuing violation.  *See Bailey*, 295 F. Supp. 2d at 353 (citing *Morgan*, 536 U.S. at 105-14).

Because Plaintiff fails to adequately allege any discriminatory Department policy or mechanism, the continuing violation exception does not apply.  Accordingly, Plaintiff's ADEA discrimination claims must be dismissed as untimely.

  C.  *Hostile Work Environment Claim*

"Hostile work environment claims . . . are treated differently for limitations analysis purposes."  *Id.* at 354 (citing *Morgan*, 536 U.S. at 115).  "Their very nature involves repeated conduct."  *Morgan*, 536 U.S. at 115.  "[I]f one act contributing to the hostile work environment claim occurred within the statutory period, other acts contributing to the same claim may be considered in determining liability, even if they occurred outside the statutory period."  *Bailey*, 295 F. Supp. 2d at 354 (citing *Morgan*, 536 U.S. at 117).

---

[4] An employer may lawfully ask questions about a job candidate's age and retirement plans.  *See Dunaway v. MPCC Corp.*, No. 12-CV-7609, 2015 WL 4429276, at *5 (S.D.N.Y. July 16, 2015) (employer asking plaintiff his age, how long he intended to remain in the industry, and whether he was "up to" the "vigors" of the job did not amount to an ADEA violation); *Chapotkat v. Cty. of Rockland*, No. 11-CV-6209, 2014 WL 1373531, at *7 (S.D.N.Y. Apr. 4, 2014) ("[I]t is not improper for an employer to inquire as to the candidate's retirement plans."), *aff'd*, 605 F. App'x 24 (2d Cir. 2015); *see also Thompson v. ABVI Goodwill Servs.*, 531 F. App'x 160, 162 (2d Cir. 2013) (summary order) (employer asking plaintiff when she was planning to retire, even drawing all inferences in her favor, was insufficient to state a plausible ADEA claim).  Indeed, an employer "has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct."  *Crowe v. Leroy Cent. Sch. Dist.*, 949 F. Supp. 2d 435, 446 (W.D.N.Y. 2013) (internal quotation marks omitted).

But even under a hostile work environment theory, a plaintiff must nevertheless plead at least one discriminatory, adverse act within the limitations period. *See Haghpassand v. Reuters Am. Inc.*, 120 F. App'x 859, 862 (2d Cir. 2005) (summary order).  As discussed above, Plaintiff has not shown that *any* discriminatory activity occurred within the 300-day period prior to his EEOC charge (Leahy's "reaffirmance" of the chain of command being a neutral observation, even if it became a fact of life after earlier discrete acts).  As a result – even assuming Plaintiff has plausibly pleaded a hostile work environment, a dubious proposition[5] – his hostile work environment claim must be dismissed as untimely, as well.

### D. *Plaintiff's State Law Claims*

In addition to his ADEA claims under federal law, Plaintiff further alleges that his rights were violated under the New York State Human Rights Law.  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has

---

[5] Hostile work environment is not a vehicle for resurrecting time-barred claims of discrimination and retaliation; it is a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation.  The plaintiff cannot piggyback the discrete adverse acts about which he complains onto hostile work environment in order to make them actionable.

*Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009).  Conduct amounting to a hostile work environment, such as discriminatory comments, slurs, or jokes, "must be severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks omitted).  Courts recognize this as a particularly stringent standard. *See, e.g.*, *Chandler v. AMR Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1185 (E.D.N.Y. 2003) (three instances of plaintiff being called "fucking old man" insufficient to state hostile work environment claim); *Morris v. Bellevue Hosp. Ctr.*, No. 09-CV-5692, 2012 WL 5932784, at *2, 6 (E.D.N.Y. Nov. 27, 2012) (plaintiff's supervisor and colleague on several occasions calling him "old man" and "Old McDonald," and saying that he "move[d] too slowly," were insufficient).  Here, Plaintiff has not alleged any, let alone severe or pervasive, slurs or harassment, or otherwise suggested his day-to-day working environment was abusive.

original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law cause of action.  *See id*. (citing 28 U.S.C. § 1367(c)(3)).

    E.  *Leave to Amend*

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has not mentioned leave to amend in his opposition brief.  He has already amended his complaint twice, (*see* Docs. 18, 26), including following Defendants' filing of a pre-motion letter outlining their arguments and his attendance at a pre-motion conference at which the issues that Defendants intended to raise were discussed.  (*See* Docs. 15, 21; Minute Entry dated Oct. 6, 2015.)  At that conference, I highlighted statute of limitations and other concerns present in the Amended Complaint, (Doc. 18).  Plaintiff has not addressed these concerns, nor has he suggested that he possesses any facts that would cure the deficiencies identified in this opinion.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not granting leave to amend where plaintiff had already amended complaint once

and amendment would have been futile); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014) (denying leave to amend was proper where plaintiff had already failed to cure pleading deficiencies and did not specify what new facts it had that would cure those deficiencies) (collecting cases). Accordingly, because Plaintiff has already had two chances to amend his pleadings, and in the absence of any indication that Plaintiff is in possession of facts that could cure the problem, I decline to grant Plaintiff leave to amend *sua sponte*. *See Gallop*, 642 F.3d at 369 ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 351 F. App'x 472, 474 (2d. Cir. 2009) (summary order) (no abuse of discretion in granting motion to dismiss without *sua sponte* granting leave to amend).

### III.     Conclusion

For the reasons stated above, Defendants' Motion to Dismiss the Amended Complaint is GRANTED. Plaintiff's federal claims are dismissed with prejudice, and his state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 28), and close the case.

**SO ORDERED.**

Dated:  August 31, 2016
        White Plains, New York

                                        _____
                                          CATHY SEIBEL, U.S.D.J.